UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HORACE MANN INSURANCE COMPANY,

    Plaintiff,                                        Civil Action No. 18-CV-13878

vs.                                                     HON. BERNARD A. FRIEDMAN

ACUITY, A MUTUAL INSURANCE COMPANY,
and GREAT AMERICAN ASSURANCE COMPANY,

    Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT GREAT AMERICAN'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT ACUITY'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on the motion of plaintiff Horace Mann Insurance Company ("Horace Mann") for summary judgment [docket entry 16]; the motion of defendant Acuity, A Mutual Insurance Company ("Acuity") for summary judgment [docket entry 20]; and the motion of defendant Great American Assurance Company ("Great American") for summary judgment [docket entry 21]. Response and reply briefs have been filed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

This is a declaratory judgment action in which three insurance companies dispute which of them is responsible for paying Reva Kaysar's Personal Injury Protection ("PIP") benefits under Michigan's No-Fault Act. Each of the three insurance companies has filed a summary judgment motion seeking a ruling that the other companies are liable (i.e., "higher in priority") for those benefits.

Kaysar is a truck driver who was injured in December 2017 when the tractor-trailer he was driving was involved in a collision on I-96 in Brighton, Michigan. Horace Mann is the no-

fault carrier for Kaysar's car, and it has been paying his PIP benefits to date. Horace Mann believes that the defendants are higher in priority under the No-Fault Act and should therefore be required to reimburse Horace Mann for the benefits it has paid to date and be responsible for any benefits payable to Kaysar or on his behalf in the future. Horace Mann's claims are for "reimbursement/recoupment pursuant to MCL § 500.3114" (Count I), equitable subrogation (Count II), common law indemnity (Count III), and declaratory relief (Count IV).

Kaysar owns the tractor he was driving when he crashed, a 2011 Volvo TT, and it is registered in his name. Great American insured the tractor under a policy it issued to Kaysar's freight-hauling company, E&E Freight Moving LLC ("E&E"), a business Kaysar owns with his wife. However, Great American's policy is a so-called "bobtail policy,"[1] which contains exclusions applicable when the tractor is used for hauling. At the time of the accident, Kaysar was hauling a load for Moon Star Express LLC ("Moon Star"), a shipping company that owns the trailer. Moon Star was also leasing the tractor from E&E at this time. Moon Star is insured by Acuity under a policy that covers the trailer as well as any vehicles Moon Star owns.

The parties agree, correctly, that under the No-Fault Act, a person injured in a motor vehicle accident must ordinarily turn first to his own no-fault carrier for PIP coverage, even if he was injured while driving or riding in a vehicle other than the one identified in his policy. In the present case, this means that Horace Mann, which insures Kaysar's private vehicle, is responsible

---

[1] "Generally, a 'bobtail' policy is a policy that insures the tractor and driver of a rig when it is operated without cargo or a trailer." *Besic v. Citizens Ins. Co. of the Midwest*, 800 N.W.2d 93, 95 n.1 (Mich. Ct. App. 2010) (quoting *Integral Ins. Co. v. Maersk Container Serv. Co., Inc.*, 520 N.W.2d 656 (1994)).

2

for paying his PIP benefits unless an exception applies. Horace Mann argues that the No-Fault Act's "employee exception" applies because Kaysar was employed by Moon Star at the time of the accident. This exception states that "[a]n employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer shall receive [PIP] benefits to which the employee is entitled from the insurer of the furnished vehicle." Mich. Comp. Laws § 500.3114(3).

The parties debate at length about whether Kaysar was an employee or an independent contractor vis-a-vis Moon Star. The evidence bearing on this issue is disputed. Horace Mann points to the Employment and Confidentiality Agreement, signed by Kaysar and a Moon Star representative on July 28, 2017. This document, which identifies Kaysar as "employee," states:

> 2. Employment:
>
> a. Employee will be employed by Moon Star for an indefinite term, and Moon Star will compensate Employee in such amount and upon such terms as Moon Star may determine from time to time. Either Employee or Moon Star may terminate the employment relationship at any time, for any reason or for no reason, with or without cause.
>
> b. Employee's duties and responsibilities will be established or directed by Moon Star, and Employee shall abide by all such directives and all statements of policy or procedure that Moon Star may issue. During his or her employment, Employee shall use his or her best efforts and entire business time and attention to advance the interests of Moon Star, under the direction of Moon Star, and Employee shall not directly or indirectly engage in or be associated with any other commercial or business duties or pursuits without the prior written consent of Moon Star.

Pl.'s Ex. F. This document plainly indicates that Kaysar was Moon Star's employee.

But a different document entitled Independent Contractor Agreement, which Kaysar (or possibly his wife) signed on July 25, 2017, identifies Kaysar's company, E&E, as "contractor"

3

and Moon Star as "carrier." Pl.'s Ex. G. This multi-page document states in the first paragraph that "carrier and contractor agree and intend to create by this Agreement an independent contractor relationship, and not a joint venture, partnership, or an employer employee relationship in any manner. Neither contractor nor contractor's employees shall be considered employees of carrier." Further, in paragraph 2, "contractor agrees to use the equipment more specifically described in Appendix A . . . to transport load and unload on behalf of carrier." And in paragraph 3, "contractor warrants the Equipment is in good, safe, and efficient operating condition and guarantees title thereto." The only equipment identified in Appendix A is Kaysar's Volvo tractor. Acuity points to the various provisions of this agreement showing E&E's independence in "determining the manner, means and method of performance of all services rendered under the agreement," Acuity's Resp. Br. at 4-5 (quoting ¶ 9 of the agreement), which support the argument that Kaysar worked for Moon Star an as independent contractor, not as its employee. Acuity also cites Kaysar's deposition testimony and an affidavit from Moon Star's safety director, Renee Osaer, to the effect that Kaysar could turn down hauling jobs from Moon Star without negative consequences, that he could haul for other companies so long as he covered up the Moon Star logo, and that Kaysar was responsible for paying for his own fuel and choosing his travel routes.

Kaysar's status as an employee or independent contractor vis-a-vis Moon Star is clearly disputed, and the Court cannot resolve that issue on summary judgment. The Court need not do so, however, because Kaysar is self-employed and was working for his business when he was injured. Under Michigan law, Kaysar is therefore deemed to be an employee for purposes of the No-Fault Act's employee exception. This rule was first articulated by the Michigan Supreme Court in *Celina Mutual Ins. Co. v. Lake States Ins. Co.*, 549 N.W.2d 834 (Mich. 1996). In that case, the

4

injured person, Robert Rood, was injured while on a job and "driving a wrecker truck owned by Rood's Wrecker & Mobile Home Service," a sole proprietorship owned by Rood. *Id.* at 834-35. The Michigan Supreme Court stated: "We believe that it is most consistent with the purposes of the no-fault statute to apply § 3114(3) in the case of injuries to a self-employed person." *Id* at 836. Therefore, the insurer of the wrecker he was driving when injured (Celina) was first in priority for paying Rood's PIP benefits, not the insurer of his private vehicles (Lake States). As later explained by the Michigan Court of Appeals, the rule articulated in *Celina* "is that a self-employed person operating a motor vehicle owned by that self-employed person in the course of his or her self-employment is both an employee and employer for purposes of MCL 500.3114(3)." *Farm Bureau Gen. Ins. Co. of Am. v. Westfield Ins. Co.*, No. 330961, 2017 WL 2348747, at *7 (Mich. Ct. App. May 30, 2017).

The same result was reached in *Besic v. Citizens Ins. Co. of the Midwest*, 800 N.W.2d 93 (Mich. Ct. App. 2010). In that case, the driver owned the tractor, leased it to MGR (the shipping company for which he was driving), and crashed while hauling a load. The contractor was "Besic Express, a corporation solely owned by Besic." *Id.* at 94. "Besic owned the truck and worked as a self-employed independent contractor for MGR. Consistently with . . . *Celina*, the priority language in MCL 500.3114(3) extends to the self-employment situation of Besic." *Id.* at 100 (citation omitted). Therefore, the bobtail insurer (Clearwater), which provided PIP coverage but excluded it if the lessee's policy provided such coverage, was held liable because the only other insurer of the tractor (the carrier's insurer, Lincoln) did not provide PIP coverage.

Similarly, in *Perkovic v. Hudson Ins. Co.*, No. 302868, 2012 WL 6633991 (Mich. Ct. App. Dec. 20, 2012), the driver owned the tractor, leased it to the carrier, and was injured while

5

hauling a load. The court found that the driver was an independent contractor vis-a-vis the carrier but that, despite this, the employee exception "applies to a self-employed person." *Id.* at *4. "Thus, under MCL 500.3114(3), [the driver] was an employee who suffered accidental bodily injury while an occupant of a motor vehicle owned by the employer (himself), and he is entitled to receive PIP benefits 'from the insurer of the furnished vehicle.' MCL 500.3114(3). Thus, Zurich has priority." *Id.* Zurich was the carrier's insurer, and it provided PIP coverage; the bobtail policy, provided by Citizens, also provided PIP coverage but excluded coverage for accidents occurring "in the business of anyone to whom it is leased . . . if the lessee has [PIP] coverage." *Id.* at *1. That exclusion was upheld in light of the PIP coverage provided by Zurich.

And finally, in *Maroky v. Encompass Indem. Co.*, No. 333489, 2017 WL 4700030, *1 (Mich. Ct. App. Oct. 19, 2017), the injured driver was "the sole member of a corporate entity, Envoy Trucking," that owned the tractor and leased it to ADM Transit. He was injured while hauling a load for the lessee. Following *Besic*, the court found that the driver "was self-employed and working under an owner-operator agreement with ADM Transit. Given this, the priority language of MCL 500.3114(3) applies to plaintiff's self-employment situation consistent with our Supreme Court's analysis in *Celina*, 452 Mich. at 89." *Id.* at *4. Further, "ADM Transit's insurer was OOIDA under a policy that included PIP benefits. Accordingly, OOIDA is the insurer of highest priority per MCL 500.3114(3)." *Id.*

Based on this line of cases, the Court concludes that Kaysar was an employee within the meaning of Mich. Comp. Laws § 500.3114(3). Under that statute, he therefore shall "receive [PIP] benefits to which [he] is entitled from the insurer of the furnished vehicle." Both Acuity and Great American are insurers of the tractor Kaysar was driving. Great American, as noted, issued

6

a bobtail policy on the tractor. Acuity insures motor vehicles that Moon Star owns, and Moon Star owned the Volvo tractor at the time of Kaysar's accident by virtue of the long-term lease agreement it entered into with E&E. Under § 500.3101(2)(l), a motor vehicle's "owner" includes: "(i) A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." That Moon Star leased Kaysar's Volvo tractor and is therefore an owner it under this definition is apparent from the Independent Contractor Agreement between E&E and Moon Star, which states in relevant part:

> 6. Carrier agrees to pay contractor for the use and operation of the Equipment on the following basis or Appendix (Exhibit) B attached: Per Appendix (Exhibit) B. . . . Upon termination of the lease agreement, as a condition precedent to payment, contractor shall remove all identification devices of the carrier and, except in the case of identification painted directly on equipment, return them to the carrier.
>
> \* \* \*
>
> 19. This Agreement shall become effective on 7-25 at 2017 [sic] as reflected on the equipment receipt attached as Appendix (Exhibit A). When possession of equipment is surrendered by carrier to contractor, contractor shall furnish a similar receipt to carrier and at the time return to carrier all identification devices and other property furnished by carrier to contractor.
>
> 20. The carrier shall have the exclusive possession, control and use of the equipment for the duration of the lease and shall assume complete responsibility for the operation of the equipment for the duration of the lease. The carrier shall be considered the "owner" of the equipment, as that term is defined in 29 CFR 1057.2(d) in the event the carrier desires to sublease the equipment.

Pl.'s Ex. G. As noted above, the "equipment" is identified in "Appendix (Exhibit) A" as Kaysar's Volvo tractor. Further, this lease agreement, dated July 25, 2017, had a one-year term and was therefore in effect at the time of the accident at issue in this case. *Id.* ¶ 14.

7

Other provisions of this lease shed light on the agreement between Moon Star and E&E regarding the parties' respective responsibilities to arrange for insurance coverage. Under paragraph 9(d), contractor was responsible for "[p]aying all . . . public liability, property damage insurance on the equipment while not being operated in the service of the carrier." And under paragraph 11, carrier was required to

> maintain insurance coverage for the protection of the public pursuant to commission regulations under 49 U.S.C. 10927. The contractor agrees to carry bobtail and off-dispatch insurance coverage with respect to public liability and property damage in the limits of $1,000,000.00 combined single limits.

Thus, Kaysar was required to (and did) purchase bobtail insurance (from Great American). And Moon Star was required to (and did) purchase liability insurance (from Acuity). This division of responsibility further supports Horace Mann's argument that Moon Star leased Kaysar's tractor. Moon Star was responsible for insuring it for its business purposes; Kaysar was responsible for insuring it while it was not being used for these purposes. The referenced statute, § 10927, part of the Interstate Commerce Act, has been recodifed as § 13906. That section requires motor carriers to have security, in the form of a bond or insurance policy, "sufficient to pay . . . judgment . . . for bodily injury to . . . an individual resulting from the negligent operation . . . of motor vehicles or for loss or damage to property."

The Court concludes that Moon Star owned the tractor under § 500.3101(2)(l)(i). The Court therefore rejects the first reason Acuity offered, in its letter to Kaysar denying coverage, that the "motor vehicle involved in the . . . accident was not owned by Acuity's named insured, Moon Star Express, LLC." Pl.'s Ex. K.

Acuity's second reason for denying Kaysar's claim was that the PIP coverage

8

otherwise provided under the policy's Michigan Truckers Amendatory Endorsement was unavailable to him because that endorsement "excepts from coverage an automobile hired or borrowed by the named insured from someone who does not provide Michigan [PIP] Coverages on autos that person hires or borrows."[2] Pl.'s Ex. K. On this point, Acuity asserted in its rejection letter that "there is no coverage for the 2011 Volvo . . . because Great American . . . claims . . . that it does not provide PIP coverage for an automobile hired or borrowed by its insured, E&E Freight Moving, LLC." *Id.* In its response to plaintiff's summary judgment motion, Acuity elaborated on this assertion as follows:

---

[2] This endorsement, as quoted in Acuity's denial letter, states:

> MICHIGAN TRUCKERS AMENDATORY ENDORSEMENT
>
> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
>
> Michigan Personal Injury and Property Protection Coverages are changed as follows:
>
> 1. A covered auto also includes an auto you hire or borrow which:
>
> a. Is a covered auto for Liability Coverage;
>
> b. Is being used exclusively in your business as a trucker; and
>
> c. Is being used pursuant to operating rights granted to you by a public authority.
>
> However, a covered auto does not include an auto you hire or borrow from someone who does not provide Michigan [PIP] Coverages on autos that person hires or borrows.
>
> 2. This insurance does not apply to a covered auto hired or borrowed from you by any trucker if the trucker has [PIP] Coverage on the auto.

9

> Moon Star did not hire or borrow the 2011 Volvo from Reva Kaysar. Rather, Moon Star hired the Volvo from E&E Freight by way of the Independent Contractor Agreement. E&E Freight hired or borrowed the Volvo from Reva, the titled owner of the vehicle. While E&E Freight was the named insured on a policy issued by Great American for the Volvo, Great American has denied coverage for PIP benefits under the "Trucking or Business Use" exclusion in its policy. Since E&E Freight failed to provide [PIP] coverage on the Volvo that it hired or borrowed from Reva, the exception to the . . . endorsement applies. Thus, the Volvo is not a covered auto under the Acuity policy.

Acuity's Resp. Br. at 19.

The Court rejects this argument for two reasons. First, the argument is hyper-technical and a transparent attempt to avoid coverage. E&E is a husband-and-wife company with one tractor (the Volvo) and one driver (Kaysar). E&E does not "hire or borrow" tractors. Second, the exclusion states: "However, a covered auto does not include an auto you hire or borrow from someone who does not provide Michigan [PIP] Coverages on autos that person hires or borrows." Even assuming (incorrectly, as just noted) that the Volvo is an "auto[] that [E&E] hires or borrows," the exclusion still does not apply because E&E *did* "provide Michigan [PIP] Coverages" to the extent required by the Independent Contractor Agreement. As noted above, that agreement requires in paragraphs 9(d) and 11 that the contractor (E&E) pay for "insurance on the equipment while not being operated in the service of the carrier" and for the carrier (Moon Star) to "maintain insurance coverage for the protection of the public pursuant to commission regulations." E&E obtained PIP coverage through its Great American policy precisely to the extent required by this agreement, i.e., while the tractor was bobtailing.

As for Great American, it denied coverage with the following explanation:

> It appears that at the time of the accident you were using the truck in the business of Moon Star Express, to whom the truck

>   reportedly was leased. Because we were informed that you were hauling a load for Moon Star Express, we conclude that the above policy language precludes coverage for Michigan no-fault benefits under the Great American policy.

Pl.'s Ex. J. Great American pointed to the following exclusion in its policy:

>   C. EXCLUSION
>
>   This insurance does not apply to any of the following:
>
>   13. TRUCKING OR BUSINESS USE
>
>   Bodily injury or property damage arising out of any accident which occurs while the covered auto is being used in the business of any lessee or while the covered auto is being used to transport cargo of any type. . . .

*Id.* Great American also pointed to a policy provision stating that "[f]or any covered auto, the insurance provided by this policy is excess over any other collectible insurance." *Id.*

The Great American policy incorporates twenty-two endorsements, one of which is "17. CA2220 . . . Michigan Personal Injury Protection." Pl.'s Ex. D, Bates GAAC000010. This endorsement (Bates GAAC000046-50) states: "We will pay [PIP] benefits to or for an insured who sustains bodily injury caused by an accident and resulting from . . . use of an auto." However, the policy contains an exclusion in Part II applicable when the tractor is used "in the business of a lessee." It is undisputed that Kaysar was injured while hauling a trailer for Moon Star. Additionally, the general rule that endorsements trump general policy provisions, *see, e.g., Besic*, 800 N.W.2d at 97, does not apply because the endorsement, unlike the one at issue in *Besic*, states: "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement." Pl.'s Ex. D, Bates GAAC000046. Further, Part III of the Great American policy states: "Each and every exclusion which appears in Part II - Liability

11

Coverage for Non-Trucking Use shall apply to any Uninsured/Underinsured Motorist Coverage, Personal Injury Protection (No-Fault) Coverage and Medical Payments Coverage." Plainly, Great American's policy is a bobtail policy that provides coverage only for "non-trucking liability," as the title of the policy states.

A bobtail policy's exclusion just like the one in this case was a central issue in *Integral Ins. Co. v. Maersk Container Serv. Co.*, 520 N.W.2d 656 (Mich. Ct. App. 1994). In that case, the driver, Ralph Scott, owned the tractor and had bobtail coverage through Integral Insurance Company. Scott leased his tractor to Maersk Container Service Company, which owned the trailer Scott was hauling when he was injured. Maersk was insured by INA. The bobtail policy, as in the present case, "excluded coverage when Scott was hauling cargo for a company to whom the tractor was leased." *Id.* at 658. The trial court held that the exclusion in the bobtail policy was void as against public policy, but the court of appeals reversed because "[t]aken together, the policy issued by INA and the bobtail policy issued by Integral provided continuous insurance coverage to the tractor as required by the motor vehicle financial responsibility act." *Id.* at 659.

Great American is entitled to summary judgment based on the identical type of exclusion that was upheld in *Integral*. The exclusion in Parts II and III of the policy clearly state that there is no coverage under this policy "while the covered auto is being used in the business of any lessee." Importantly, the exclusion also states that it applies to the PIP coverage provided in the endorsement.

The Court concludes that Horace Mann is entitled to summary judgment because Kaysar was an employee at the time he was injured, and therefore the "employee exception" of Mich. Comp. Laws § 500.3114(3) applies. This means that the insurer responsible for paying

12

Kaysar's PIP benefits is the insurer of the vehicle he was driving, i.e., either Acuity or Great American. Great American is entitled to summary judgment based on the exclusions in its policy applicable when the tractor is used "in the business of a lessee" because when Kaysar was injured he was hauling a load for Moon Star who was leasing the tractor. Acuity is the only remaining insurer. Acuity's policy provides PIP coverage and, for the reasons stated above, the Court rejects Acuity's reasons for denying coverage. Acuity must reimburse Horace Mann for all PIP benefits Horace Mann has paid to date. Acuity is also responsible for paying Kaysar's PIP benefits in the future.[3] Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is granted.

---

[3] The Court notes that this result is consistent with the purpose of the No-Fault Act's employee exception, as articulated recently by the Michigan Court of Appeals:

> We have recognized that the purpose of the employer-employee exception, MCL 500.3114(3), to the general priority statute of MCL 500.3114(1) is to provide predictability in commercial settings by imposing liability on an employer's insurer rather than the insurer of the injured individual. *Besic v. Citizens Ins. Co. of the Midwest*, 290 Mich. App. 19, 31-32; 800 N.W.2d 93 (2010). Additionally, the Michigan Supreme Court has recognized that the cases interpreting MCL 500.3114(3) "have given it a broad reading designed to allocate the cost of injuries resulting from use of business vehicles to the business involved through the premiums it pays for insurance." *Celina Mut. Ins. Co.*, 452 Mich. at 89.

*Farm Bureau Gen. Ins. Co. of Am. v. Westfield Ins. Co.*, No. 330961, 2017 WL 2348747, at *4 (Mich. Ct. App. May 30, 2017). The result the Court has reached in the present case is particularly fair in light of the Independent Contractor Agreement in which Kaysar agreed to purchase bobtail coverage for the tractor and Moon Star agreed to purchase insurance that would cover the tractor while it was hauling Moon Star's loads.

IT IS FURTHER ORDERED that defendant Great American's motion for summary judgment is granted.

IT IS FURTHER ORDERED that defendant Acuity's motion for summary judgment is denied.

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE

Dated: March 20, 2020
       Detroit, Michigan